United States District Court
Southern District of Texas
FILED

MAR 18 2025

Nathan Ochsner, Clerk

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MIDLAND DIVISION

IN RE: GERARDO ALANIZ  §
Debtor  §
 §  Case No. 24-70028
 §
 §  Chapter 13

### CREDITOR, EZMAX LOANS' OBJECTION TO THE DISCHARGE OF DEBTOR's DEBT TO EZMAXLOANS WITH NOTICE THEREOF

This is an objection to your claim in this bankruptcy case. This objection asks the Court to disallow (eliminate), reduce, or modify your claim as set forth in this objection. If you do not file a written response to this objection within 30 days from the date of mailing of this objection, the Court may disallow (eliminate), reduce, or modify your claim as set forth in this objection, without a hearing being held.

1. Complainant, EZMAX LOANS, 1214 E Mockingbird; Victoria, Texas 77904, is a creditor of the above-named Debtor, and is person entitled to file a complaint to obtain a determination of the dischargeability of Ms. Nelson's (Hereinafter "Debtor") debt to EZMax Loans (Hereinafter "Creditor") pursuant to 11 U.S.C., §4007 (a).

2. Respondent, GERARDO ALANIZ, 321 W Esperanza; Mission, Texas 78574, is the debtor in the above-captioned proceedings.

3. This is an action under 11 USC, §523 (a) (2) and Rule 4007 of the Federal Rules of Bankruptcy Procedure objecting to the discharge of Mr. Alaniz's debt to EZMax Loans (Creditor).

4. Attorney for Complainant (Creditor), has investigated the actions of the Respondent Debtor listed in the above styled and numbered cause and being satisfied that proper grounds exist for the denial of Respondent, Debtor's, discharge of his debt to Complainant, Creditor, and, as such, they file this Complaint objecting to that discharge on the grounds detailed in the following paragraphs.

5. In the loan application process with Creditor the Debtor certified he was employed full time and that he earned a gross monthly income of $5,400.00. Debtor made these certifications in writing in the application to Creditor. Further, and to substantiate these claims, Debtor provided Creditor with copies of his Direct Pay Vouchers and access to bank statements showing this paycheck going into Debtor's checking and/or savings account. It was reasonable for Creditor( after exercising due diligence) to rely on these written and documents certificates, and they did so in approving a loan for Debtor in the amount of $1,815.63 which he accepted on 07/20/2023 3:17:44 PM via auto deposit onto his debit card numbered *********7949 (exp. 7/28).

6. This loan was on a 10 Bi Weekly term with the first payment of $181.56 being due on or before 7/28/2023 and the last payment of $181.59 being due on or before 12/01/2023.

7. Debtor refinance this loan on 10/2/2023 and received an additional $800.00 cash. This new loan number was 40214. The new total now due to EZMax Loans (Creditor) was $1,821.97. This loans was also on a 10 Bi Weekly term with the first payment of $182.50 being due on before 10/06/2023 and the last payment of $182.17 being due on or before 2/09/2024.

8. Debtor signed an ACH and Auto Debit Credit Card Authorization Agreement (as a material term of him receiving his loan) and, in so doing, authorized Creditor to use Debtor's Bank of America Checking Account numbered ****4301 and/or his Savings Account numbered ****4343 (via ACH) by Creditor to process Debtor's scheduled payment on this loan. Debtor also authorized EZMax Loans to use his debit card (via auto debit) numbered ******5909 to be used (via ACH) by Creditor to process Mr., Alaniz's scheduled payment on this loan. This Agreement clearly detailed the first payment on this loan would be $182.20 and would be due on or before 10/6/2023, was in writing, and signed by Debtor. Lastly, Debtor promised if the banking and/or debit card information given in his Authorization Agreement changed that he would inform Creditor of this change and provide Creditor with this information reasonably soon after receiving the same.

9. Creditor processed Debtor's first scheduled payment of $182.20 on 10/06/2023 via auto debit from Debtor's pre-authorized debit card numbered ***********5909. Subsequent to this payment being made, and on 10/24/2023, Debtor contacted Creditor and claimed he was unaware this would be the first payment due date on his loan.

10.     Personnel from Creditor assured Debtor this was the first due date and that this was what was listed in the ACH and Auto Debit Credit Card Authorization Agreement Debtor signed on 10//02/2023 at 3:04:56 PM and prior to him receiving the funds from this loan. Debtor's next scheduled loan payment due date was 10/20/2023 in the amount of $182.20. The first attempts by Creditor to receive this payment (via ACH from Debtor's pre-authorized and material term savings or checking account) was returned unpaid with the error code of R01 (insufficient funds). Ultimately, and on or about 11/20/2023, Creditor was notified (via the error code of R02 on a returned and unpaid ACH attempt that Debtor's checking account was closed.

11.     Further, each attempt by Creditor to receive Debtor's scheduled payments after 10/06/2023 (via auto debit from his pre-authorized debit card) were returned unpaid with the error message of "Do Not Honor" indicating Debtor was turning his card off to prevent these payments from going through.

12.     Lastly, each and every attempt to receive Debtor's scheduled payments after 11/20/2023 (via ACH from his pre-authorized savings account) were returned unpaid with the error code of R01 (Insufficient Funds). This was because shortly after Debtor called complaining about his 10/06/2023 payment being taken via auto debit from his pre-authorized debit card he began transferring monies he had placed in his savings account from his paycheck to another checking account numbered 1037 in order to both (a) places these monies out of reach of Creditor and (b) to render the savings account chronically too low for any of Debtor's payments to be processed though successfully.

13.     Indeed, and at the time (and for a substantial time before this loan being refinanced) Debtor would split his paycheck and put some into his Bank of America Checking Account numbered ****4301 and some into his Savings Account numbered ****4343. Eventually, then, he would then transfer some of the monies in the savings account back into his checking account numbered *******4301 with the last such transfer occurring on 10/06/2023. However, and after 10/06/2024 (in particular on 10/23/2013, 10/23/2023, and 10/30/2023) Debtor began transferring these monies into a different Bank of America checking account numbered****1037…which was an account opened after Debtor closed his account numbered ****4301.

14.     Debtor filed for Bankruptcy, Chapter 13, less than 124 days after he received this loan from Creditor. However, Debtor purposefully omitted Creditor from his Petition for

Chapter 13 Bankruptcy in this Court.[1]

15.     In sum, Debtor promised and guaranteed (in writing and with supporting documentation) that he was employed and had a gross monthly salary of $5,400.00 in order to qualify for his loan with Creditor. However, and immediately after Debtor received his loan from Creditor (i.e., after his first payment on the loan) he closed the checking account he pre-authorized (Bank of America checking account numbered ****4301) and promised (in wiring) could be used (via ACH) by Creditor to receive Debtor's schedule payments on Loan number 40214. Debtor purposefully did this in order to prevent Creditor from receiving Debtor's pre-approved scheduled payments in this manner. Next, Debtor also promised and authorized (again in writing) that Creditor could use Debtor's pre- authorized debit card (via auto debit) to receive Debtor's scheduled payments, but Debtor purposefully turned off his card right before each and every scheduled payment due date to intentionally prevent Creditor from receiving Debtor's schedule and pre-approved payments in this manner. Lastly, Debtor began transferring monies out of his pre-authorized Bano of America savings account numbered ****4343 to another checking account Debtor had opened with Bank of America after he closed his other checking account (and not provided to Creditor to be used for processing Debtor's schedule payments through) in order to keep this account balance so chronically low that Creditor could never process Debtor's scheduled and pre-approved payments through this account.

16.     Debtor began taking all these steps designed to prevent Creditor from receiving their monies back on Loan Number 40214 because he had already began taking steps/preparing to file for Bankruptcy and then have this loan discharged before applying for (and receiving the cash from) his loan with Creditor. Indeed, Debtor avers in his Petition for Bankruptcy before this Court that he had **"received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion." That Certificate was dated 1/31/2024.** Debtor's loan with Creditor was only 124 days old at the time of this averment and only 120 days at the time of this Certificate. It is inconceivable that Debtor had not already interviewed with and/or retained Bankruptcy Counsel before this date.

---

[1] This error of omission was brought to Debtor's (and the Trustee of this Court's ) attention via email on Mar 3, 2025 at 3:15 PM. It also seems there were other creditors also omitted from this Debtor's Original Creditor Meratrix. Indeed, and besides this Creditor, at least four other Creditors were added to this Debtor's Amended Verification of Creditor Matrix.

17.     Debtor never relayed those steps/preparations (though having a duty to fully disclose his financial worthiness) to Creditor because he knew Creditor would not have given him a loan. Creditor was not aware (nor could they have been) of these steps/preparations. Creditor relied on the absence of this information in granting Debtor a loan. Clearly, then, Creditor is now being harmed by their said reliance    All said actions being a fraud by omission. White v. Cyr (In re Cyr), 838 Fed. Appx. 54, 62 (5th Cir. 2020).

18.     Alternatively, Debtor assured and certified to Creditor in writing that he had a fulltime job and earned a gross monthly salary of $5,400.00 as assurances that he had the financial ability to fully satisfy the contractual obligation contained in his Loan Paperwork for Loan number 40241. Clearly, if Debtor found it necessary to file for Bankruptcy only 124 days after receiving his loan from Creditor, then these assurances were given were not true and correct. Creditor relied on these assurances and was reasonable to do so. However, now Creditor has been harmed by those false assurances and their reasonable reliance in the same as Debtor seeks to be cleansed from any responsibility for this loan through these proceedings. All such actions amounting to actual fraud. Pastorek v. Mijares (In re Mijares), 2022 Bankr. LEXIS 1542.

19. All actual fraud (and fraud by omission) rendering Debtor's loan to Creditor non-dischargeable through these bankruptcy proceedings under the text and spirit of 11 USC, §523 (a) (2) (A) and 11 USC, §523 (a) (2) (B) and renders his loan balance of $1,628.44 with Creditor still due and owing and collectible by Creditor. Discovery will be necessary to obtain the information and documents necessary for EZMax Loans (Creditor) to carry its burden on the elements of this type of fraud.

**THEREFORE, COMPLAINANT PRAYS THAT THIS HONORABLE COURT**

a.) **Set** Complainant's Objection to the Discharge of Debtor's debt to Complainant for a hearing and serve Notice to all parties and counsels of record of the day-date-time-and

place of that hearing---and after said hearing;

b.) **Allow** for Discovery of Debtor from Creditor; and

c.) **DENY** Debtor's request to have his debt in the amount of $1,628.44 to Complainant discharged and **REMOVE** the stay imposed by 11 U.S.C. § 362(a) on the herein detailed debt allowing Complainant to pursue collecting the same.

Respectfully submitted,

EZMax Loans, P.L.L.C.
1214 E Mockingbird
Victoria, Texas 77904
(361) 573-5626 Telephone

By:    Kevin C Loudon
       SBN: 24049812
       kevinl@ezmaxlegal.com

## CERTIFICATE OF SERVICE

I, the undersigned, attorney of record for Complainant, EZMax Loans do certify that a true and correct copy of the foregoing Complaint/Objection has this the 13th day of March 2025 been served on the below listed party/attorney of record in the also below listed manner.

Marcos D. Olivia
Marcos D. Olivia, PC
223 W Nolana Ave
McAllen, Texas 78504-2500
*Via email to marcos@olivia.law*

Ms. Yvonne V Valdez
Chapter 13 Trustee
539 N Carancahua Suite 800
Corpus Christi, TX 78401
*Via First Class United States Postage*

Kevin C Loudon   Digitally signed by Kevin C Loudon
                 Date: 2025.03.13 15:30:53 -05'00'

Kevin Loudon